**Roy ARNESON, Special Administrator for the Estate of Morten Arneson, Appellant,**

v.

**Earl ARNESON, individually, and Earl Arneson as Trustee, Respondent.**

**No. CX–85–297.**

Court of Appeals of Minnesota.

July 30, 1985.

Review Denied Oct. 11, 1985.

Patrick F. Flaherty, Minneapolis, for appellant.

Robert M. Austin, Minneapolis, for respondent.

Heard, considered and decided by SEDGWICK, P.J., and WOZNIAK and RANDALL, JJ.

## OPINION

SEDGWICK, Judge.

Appellants are heirs and nieces and nephews of Morten Arneson, deceased, who died testate on October 23, 1982. They brought action to set aside the will and testamentary trust dated July 17, 1982, and acknowledged August 11, 1982, as null and void on grounds the testator lacked testamentary capacity and was subject to undue influence. The trial court granted respondent's summary judgment on the basis that appellants lacked standing to contest the instruments. We reverse and remand.

## FACTS

Morten Arneson, deceased, executed a will and trust on July 17, 1982, three months before his death. Handwritten changes were made in the trust instrument. These changes were initialed and properly witnessed. On August 11, 1982 a retyped trust, conforming in all material respects to the initialed one of July 17, 1982, was executed by Mr. Arneson. The instruments appointed Earl Arneson, Morten's nephew, as personal representative and trust administrator. The bulk of Morten Arneson's estate, approximately $400,000, was distributed through the trust. The probate estate was approximately $5,000.

Following Arneson's death on October 23, 1982, Roy Arneson, another nephew of decedent, petitioned the Hennepin County Probate Court to appoint him special administrator of Morten's estate, claiming that decedent left invalid wills, that no will had been presented for probate, and that Earl Arneson was disposing of the deceased's property under the terms of a void will and trust.

The probate court appointed Roy Arneson special administrator for the limited purposes of collecting outstanding assets of the estate and commencing action on behalf of the estate to adjudicate validity of the will and trust.

Appellant Roy filed an amended complaint October 25, 1983, alleging the will and trust dated July 17, 1982 and acknowledged August 11, 1982, were null and void because the testator lacked testamentary capacity and because Earl Arneson exercised undue influence "in procuring the said Will and the said Trust."

Respondent's answer denied the allegations and alleged appellant lacked standing to maintain the action.

Respondent Earl filed a motion for summary judgment on May 23, 1984. On November 8, 1984, the probate court granted respondent's motion, finding no genuine issue of material fact. The court reasoned that appellants take no less under the July 17, 1982, will and trust than under any previous will and trust and therefore have no standing to contest the will and trust.

On December 5, 1984, appellant's new attorney moved the court to vacate the summary judgment and to permit them to amend their complaint and proceed with discovery under Rules 12 and 60, Minn.R. Civ.P., and Minn.Stat. § 525.02 (1982).

On December 10, 1984, before the probate court ruled on the motion made five days earlier, appellants appealed from the summary judgment. Shortly thereafter appellants asked the Court of Appeals to remand the case so the probate court could rule on the motion. This court declined and appellants dismissed their first appeal. The probate court has never ruled on appellants' motion to vacate.

On February 12, 1984, appellants filed a second notice of appeal from the summary judgment. While this appeal was pending, appellants accepted and negotiated checks for the full amount of their distributive share under Clause B of the July 17, 1982, trust.

### ISSUE

1. Did the trial court err in finding that appellants have no standing to contest the will and testamentary trust?

2. Can appellants, who are seeking to have a will and trust declared null and void, accept payment under a portion of the trust and still assert its partial invalidity?

### ANALYSIS

1. In granting summary judgment the trial court found that since appellants take as much or more under the August 11, 1982, will and trust as they would have taken under prior wills they have no standing to contest the will.

Minnesota does not require a person contesting a will to have standing. States that do require the party contesting the will to show that he received less under the contested will than under prior wills. Respondent cites an old Iowa case holding that heirs must have something to gain in order to have standing to contest a will. *In re Adkins' Will*, 179 Iowa 1025, 162 N.W. 193 (1917).

Decedent was not married and had no children. Appellants, his nieces and nephews, are his heirs at law and are "interested persons" within Minn.Stat. 524.1–201 (20) (1982). As such, they are entitled to have their claim of undue influence heard by the probate court.

This case is a procedural and substantive mess. We are convinced that appellants have been prevented from amending their pleadings to narrow the allegation of undue influence to relate only to Article III C of the trust because of an erroneous entry of summary judgment. The December 5, 1984 motion to permit appellants to amend their pleadings was never ruled upon by the trial court.

*In re Hartz's Estate*, 237 Minn. 313, 54 N.W.2d 784 (1952), is authority for permitting appellants to accept their distributive share under one portion of the trust while still asserting the invalidity of a separable portion because of undue influence.

The *Hartz* court was primarily discussing whether extrajudicial statements of a primary beneficiary under a will were admissible as substantive evidence as well as for impeachment purposes. The court concluded they were admissible for both purposes under certain conditions. One condition was where undue influence is established and the undue influence vitiated only provisions benefiting declarant which could be separated from the remainder of the will without destroying any general scheme of distribution.

Although the present facts do not concern the evidentiary question in *Hartz*, that case does support appellant's arguments that in undue influence cases, provisions of

the testamentary trust are separable under the following conditions: (1) if the undue influence vitiates only a part of the will and the part so vitiated is separable and may be deleted without affecting the remaining provisions of the instrument; (2) where the remaining provisions of the will, in spite of the deletion, remain intelligible and complete and can be carried into effect without destroying the testator's wishes as evi-denced by a connected and general scheme of distribution, and (3) where separability can be accomplished without causing manifest injustice to one or more of the beneficiaries. *Id.* at 322, 54 N.W.2d at 790.

Article III C of the trust prepared for decedent's signature on July 17, 1982, and the changes made by decedent before signing, are reproduced as follows:

C. Upon the death of MYRTLE BINTLIFF or if she should predecease the GRANTOR, then upon his death, all the rest, residue and remainder of the Trust Estate together with all additions thereto and accumulations of income, and all other accurals of every kind, nature and description, shall be transferred, paid over and delivered to ~~each person named below in the proportions indicated:~~ EARL ARNESON

~~1.  9% thereof to the GRANTOR'S nephew, EARL~~ ARNESON, or his issue by right of representation.

2.  8% there of to the GRANTOR'S nephew, MARVIN ARNESON, or his issue by right of representation.

3.  8% thereof to the GRANTOR'S nephew, MORTEN ARNESON, or his issue by right of representation.

4.  8% thereof to the GRANTOR'S niece, EDITH NELSON, or his issue by right of representation.

5.  8% thereof to the GRANTOR'S niece, RUTH MEYER, or his issue by right of representation.

6.  8% thereof to the GRANTOR'S nephew, ROY ARNESON, or his issue by right of representation.

~~7.  8% thereof to the GRANTOR'S nephew, EARL ARNESON, or his issue by right of representation.~~

~~If any of the persons named hereinabove predecease~~ the GRANTOR leaving no issue ~~surviving them, then~~ his or her share shall be ~~distributed~~ among the remaining beneficiaries ~~in the~~ proportion of their representative ~~shares.~~

Article III C of the trust at issue appears to fit all *Hartz* criteria for severability. If appellants can prove undue influence by Earl as to Article III C, the remaining provisions are intelligible and complete and can be carried into effect without destroying the testator's wishes. Moreover, separability can be accomplished without causing manifest injustice to other beneficiaries.

Article III C is separable within the purview of *In re Hartz's Estate.* No prejudice will result if pleadings are amended and the matter set for trial since Myrtle Bintliff is still living and the remainder interests are not to be distributed until her death.

The facts of record require that a trial be held to determine if Earl Arneson exerted undue influence over Morten Arneson.

Medical reports on Morten show an 89 year old man with multiple physical and mental problems. The latter include periods of confusion and hallucinations. Mor-

ten left nothing to Earl in three prior wills dated from July 9, 1976, to April 16, 1982. Earl moved in with testator in April 1982, and from April to July, 1982, Earl's share of the estate increased from $10,000 to $250,000.

## DECISION

■ The trial court erred in granting summary judgment. Appellants are heirs and therefore interested persons within Minn.Stat. 524.1–201(20). As interested persons, they are entitled to have their claim of undue influence heard and considered. Acceptance of payment under one section of a trust does not, under these facts, prevent them from contesting the validity of another, separable section.

The matter is reversed and remanded to the trial court with directions to permit appellants to amend their pleadings in accord with their pending motion, and for trial on the merits. Reversed and remanded.