CLINE v. CLINE.

1. DEEDS—CONSTRUCTION—CHARACTER CANNOT BE CHANGED BY SUBSEQUENT WRITING.
    If a deed was executed and delivered with the intention that it should pass a present interest, it could not be changed to one testamentary in character by the making and acceptance of a subsequent writing, since it must be construed as of the time it was written.

2. CANCELLATION OF INSTRUMENTS—DEEDS—EVIDENCE—SUFFICIENCY.
    In a suit for the cancellation of a deed on the ground that it was intended to be testamentary in character and that the grantee, who was grantor's son, had failed to perform

On question as to when a deed may be deemed testamentary in character, see note in 1 L. R. A. (N. S.) 315.

certain obligations, evidence *held*, insufficient to support the allegations.

Appeal from Ingham; Carr (Leland W.), J. Submitted January 15, 1924. (Docket No. 68.) Decided March 5, 1924.

Bill by Elizabeth A. Cline against William M. Cline and another to set aside a deed. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Frank L. Dodge* and *L. B. Gardner*, for plaintiff.

*A. M. Cummins*, for defendants.

CLARK, C. J. This case is well briefed. At the argument we were impressed that there was merit in appellant's contentions. But, after a careful examination of the record, we are constrained to agree with the trial judge. We adopt his opinion to dispose of the case:

"This is a proceeding instituted for the purpose of setting aside a deed executed on the 3d day of September, 1890. By the terms of said instrument the plaintiff conveyed to the defendant, William M. Cline, who is her son, a lot on Franklin street, in the city of Lansing. This deed was in the usual form with the exception that there was inserted therein, following the description of the premises, a clause reading as follows:

" 'It being hereby understood and agreed between the foregoing parties that if the said second party should die before making any repairs or general improvements on the building on said property this conveyance shall become null and void and the title hereby conveyed revert to and belong to said first party.'

"The language quoted was, at some time, crossed out by having lines drawn through it. The parties are not in accord as to when such attempted striking out occurred, the plaintiff asserting that the lines were

drawn after the deed was executed and delivered, while the defendant claims that the attorney who prepared the conveyance struck out the clause at his (defendant's) request. The matter becomes material in this case only in so far as it tends to bear on the intention of the parties.

"In 1918 the plaintiff began a suit against William M. Cline and his wife, Dora Cline, the defendants in the present suit, for the purpose of having the deed declared void on account of the alleged alteration, it being asserted that the attempt to eliminate the clause above quoted was made after the execution and delivery of the deed, and that such act rendered the instrument void. It appears from the record that this case was dismissed for lack of progress, no testimony being taken in open court, although the deposition of the plaintiff herself appears in the court file.

"The bill of complaint in the present suit was filed on the 3d of November, 1922. It is set forth therein that the defendant William M. Cline procured the execution of the deed to himself by the making of promises that he subsequently failed to keep. In argument at the close of the testimony, however, counsel for plaintiff have not pressed any claim for relief on this ground, but insist that the instrument of conveyance, although in form a deed, should be held to be a testamentary disposition. While the bill of complaint is obviously not drawn on any such theory, the suggestion is made therein that the deed was not intended to become effective until after the death of the grantor.

"Without discussing the evidence in detail it may be said, and I do not understand that counsel for the plaintiff claim otherwise, that the proofs fail to sustain the allegations of the bill of complaint with reference to fraud or undue influence in procuring the execution of the deed. In so far as any statements that may have been made by plaintiff with reference to fixing up the property or caring for plaintiff are concerned the conclusion is unavoidable that any neglect on the part of defendant was acquiesced in by the plaintiff. The attorney who prepared the deed was a witness on the trial and testified that at that time he explained the transaction fully to the plaintiff. There is no question but that it was understood be-

tween the parties that the plaintiff should have the use and benefit of the property during her lifetime, unless defendant improved the same by constructing a brick store thereon.    If this were done it appears from the plaintiff's testimony that the conversation between herself and defendant William M. Cline was to the effect that the rentals received should be divided between them.    It appears further that there was some discussion with reference to placing the deed on record, it being the desire of plaintiff that it should not be recorded.    It was explained to her by the attorney referred to that if the instrument was withheld from the records she could dispose of the property to a purchaser without notice so as to cut off any interest of her son in the property.    There is no testimony, however, tending to show that at that time plaintiff indicated that she had any intention of attempting any such conveyance, or any desire to do so.

"In 1894, nearly four years after the execution of the deed, defendant William M. Cline gave to plaintiff an instrument in writing which referred to the conveyance of September 3, 1890, and recited that the same was made

"'on condition that the title thereto shall not fully pass to me until the death of my said mother.    I do hereby state that it is fully understood and agreed between my said mother and myself that in case of my death prior to the death of my said mother said conveyance shall be null and void, and shall be returned at once to her.'

"Counsel for plaintiff emphasize this writing and claim that it should be regarded as a formal admission on the part of defendant that the instrument referred to was in fact of a testamentary character.    I am impressed, however, that such construction is not tenable. Had the deed been regarded by the parties as in the nature of a will the paper of 1894 was uncalled for. Apparently what the parties had in mind was the making of a stipulation or agreement that if plaintiff survived her son, whatever interest in the property had been conveyed to him should revert to and vest in her.    In any event the deed must be construed as of the time that it was given.    If executed and delivered with the intention that it should pass a present

interest to the defendant its character could not be changed by the making and acceptance of the writing prepared four years thereafter.

"Assuming for the sake of the argument, but not determining that the clause in the deed through which the lines were drawn had not been stricken out before the delivery of the instrument, it is apparent that the parties intended that some interest should pass to the grantee. The clause suggests that there had been conversations between the parties with reference to the making of improvements, and also that such improvements were to be undertaken by defendant. It is scarcely conceivable that the parties should have contemplated the assumption of any such obligation by defendant without the vesting in him of some interest in the premises.

"Considering all of the testimony that has been offered I am brought to the conclusion that the plaintiff intended, at the time of the execution of the deed, to convey the lot to defendant subject to the understanding between them that she should have the use and benefit thereof during her life time, and with the further provision that if defendant expended his own funds in constructing a new store building on the lot he should share in the additional rentals to be received. The conduct of the parties is not consistent with any other conclusion. The record discloses that, in 1896, the frame store building was damaged by fire. The insurance money received by plaintiff was turned over to the defendant who then, with the apparent consent and approval of plaintiff, proceeded to have the building reconstructed. It is not disputed that defendant contributed labor to the work of rebuilding and his claim that he also expended some of his own money to that end is not controverted. It appears further that he retained at least one month's rent without objection, at that time, on the part of plaintiff. All other income derived from the rental of the premises was turned over to the plaintiff.

"Shortly before the execution of the deed of 1890, plaintiff took up her residence with her daughter, Mrs. Warren. Some years later, the exact date not being material, she appears to have conveyed to the daughter another parcel of property that she owned, referred to in the testimony as the 'six acres.' It

further appears that in February, 1917, she gave to her daughter and son-in-law a quitclaim deed of the lot in dispute in this case. About a year later, and immediately prior to the starting of the first suit for the cancellation of the deed, a reconveyance to the plaintiff was made. In her testimony plaintiff denies the making of this conveyance and also indicated that she had no recollection of the first suit. At the present time Mrs. Cline is 93 years of age, and while her mental condition is unusually clear for a person of such advanced age, it is obvious from a reading of her testimony that her recollection on many points is not accurate. Her examination in chief was presented in the form of a deposition, but she gave rebuttal testimony before the court, the proceeding being held in her house for that purpose. In denying that she had ever deeded the lot to her daughter and son-in-law she stated, in effect, that she could not have done so for the reason that she had previously deeded it to her son, suggesting that she had had the thought in mind that as a result of the conveyance of 1890, the defendant had taken a vested interest.

"Counsel have referred in argument to the case of *Kuhlman* v. *Kuhlman,* 218 Mich. 685. There, however, the deed was left in escrow with the third party, and it was found by the trial court, with which conclusion the Supreme Court agreed, that it was the understanding between the parties that the grantor reserved the right to call for the deed and to take possession of it if he so desired. A similar situation was involved in *Leonard* v. *Leonard,* 145 Mich. 563. It does not occur to me that these decisions are controlling in view of the circumstances suggested by the record in the case at bar. Rather, the basic principles that must be applied are those recognized and applied by the Supreme Court in *Hitchcock* v. *Simpkins,* 99 Mich. 198, and *Reed* v. *Brown,* 184 Mich. 515.

"Any extended discussion of the testimony is, as I view the matter, uncalled for. It may fairly be said that much of the proof offered has little, if any, bearing on the question that counsel now urge as the issue in the case. On the record as presented it cannot be said that it was the intention of the parties that the conveyance of September 3, 1890, should be regarded as testamentary in character. On the contrary, the

instrument, itself, as well as the attendant facts and circumstances, show that the plaintiff intended to convey to the defendant a vested interest.    It follows that the relief sought must be denied."

Decree affirmed, with costs to defendants.

McDonald, Bird, Sharpe, Moore, Steere, Fellows, and Wiest, JJ., concurred.